United States District Court
Middle District of Florida
Jacksonville Division

**GEROVANIE BINDER,**

    *Plaintiff,*

v.                                              No. 3:17-cv-1024-J-PDB

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

# Order

Gerovanie Binder brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security denying her applications for benefits. Under review is a decision by an Administrative Law Judge ("ALJ"). Tr. 17–30. The alleged onset date is March 23, 2013. Tr. 17. Summaries of the law and the administrative record are in the ALJ's decision, Tr. 17–30, and parties' briefs, Docs. 16, 17, 20, and not fully repeated here. Citations are to law in effect on September 15, 2016, when the ALJ issued his decision or, when appropriate, on September 12, 2013, when Binder filed her applications.

## I.    Standard of Review

A court reviews the Commissioner's factual findings for substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.* If substantial evidence supports an ALJ's decision, a court must affirm, even if other evidence preponderates against the factual findings. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

"This restrictive standard of review applies only to findings of fact," and "no similar presumption of validity attaches to the [Commissioner's] conclusions of law, including determination of the proper standard to be applied in reviewing claims." *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoted authority omitted).

## II. Arguments

Binder raises two principal arguments. First, Binder argues the residual functional capacity ("RFC") is "legally insufficient" because it fails to include limitations caused by her headaches. Doc. 16 at 3–19. For that argument, she makes several sub-arguments: the ALJ erred by failing to properly consider her headaches at step three of the sequential evaluation process, Doc. 16 at 5–6; the ALJ erred by failing to discuss or include in the RFC actual limitations caused by her headaches, Doc. 16 at 6–11; and the ALJ failed to properly analyze a questionnaire completed by her treating physician, Joseph Cronin, M.D., in August 2014, Doc. 16 at 11–19. Second, Binder argues the ALJ's evaluation of her symptoms is "legally insufficient" because, besides asserted errors underlying the first argument, he failed to consider her "stellar" work history. Doc. 16 at 19–21.

## III. Analysis

### A. *Step Three*

Binder argues the ALJ erred by failing to properly consider her headaches at step three of the sequential evaluation process. Doc. 16 at 5–6.

The Social Security Administration ("SSA") uses a five-step sequential process to decide if a person is disabled, asking whether (1) she is engaged in substantial gainful activity, (2) she has a severe impairment or combination of impairments, (3) the impairment meets or equals the severity of anything in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, App'x 1, (4) she can perform any of her past relevant work given her RFC, and (5) there are a significant number of jobs in

the national economy she can perform given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012).

For step three, the Listing of Impairments describes impairments considered severe enough that they prevent a person from doing "any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a) (2011), 416.925(a) (2011). To meet a listing, an impairment must satisfy all criteria in the listing. 20 C.F.R. §§ 404.1525(a) (2011), 416.925(a) (2011). Diagnosis alone does not suffice. *Id.* If a claimant meets or equals a listing, she is disabled, and progression through the sequential evaluation process ends. 20 C.F.R. §§ 404.1520(a)(4)(iii) (2012), 416.920(a)(4)(iii) (2012).

Binder summarizes the general law on step three; contends Listing 11.03 (December 15, 2004, to September 28, 2016) is "the most appropriate" listing for migraines because it considers alteration of awareness, loss of consciousness, and significant interference with daytime activity; observes she testified her headaches last and render her bedridden all day; summarily contends she therefore established alteration of awareness or significant interference with daytime activity; and concludes, "Yet, the ALJ's decision contains no discussion whatsoever regarding whether [her] migraines meet or equal listing 11.03. This alone is error, which can only be addressed by remanding the case for further proceedings." Doc. 16 at 5–6.

Under *Hutchinson v. Bowen,* 787 F.2d 1461, 1463 (11th Cir. 1986), Binder's argument fails. In *Hutchinson,* the Eleventh Circuit observed that an ALJ need not mechanically recite evidence and may implicitly find a claimant fails to meet a listing. 787 F.2d at 1463. The court held that although the ALJ had not explicitly determined the claimant failed to meet a listing, the determination was implicit in the ALJ's decision. *Id.* The court explained that the ALJ was "obviously" familiar with the sequential evaluation process, his statement of the law recognized a claimant who meets a listing is deemed disabled, and his continuation to the fourth and fifth steps made it "clear" he had determined the claimant failed to meet a listing. *Id.*

Here, the ALJ did not reversibly err in failing to discuss Listing 11.03 at step three. The ALJ's determination that Binder failed to satisfy Listing 11.03 is implicit in his decision discussing the law on step three, Tr. 18, conducting a step-three analysis, Tr. 20–21, finding an RFC, Tr. 21, and proceeding to steps four and five, Tr. 28–30. *See Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 613 (11th Cir. 2017) (applying *Hutchinson* and holding that although the ALJ mentioned no particular listing, his determination that the claimant failed to meet the listing was implicit in his determination that the claimant had possessed the RFC to perform past relevant work; "The ALJ would only have reached that determination by first determining that [the claimant] had no severe impairment that met or equaled a listed impairment.").

For the reasons stated in Binder's reply brief, Doc. 20 at 2–3, the Court does not consider that neither Binder nor her counsel asked the ALJ to consider Listing 11.03. Just as the ALJ need not expressly mention a particular listing, neither a claimant nor her counsel must expressly request consideration of a particular listing.

Neither the Commissioner nor the Court reads Binder's initial brief to raise the issue of whether substantial evidence supports the ALJ's implicit determination that she fails to meet or equal Listing 11.03. *See* Doc. 17 at 6 n.4. A claimant abandons any issue she does not raise "plainly" and "prominently." *Morrison v. Comm'r of Soc. Sec.*, 660 F. App'x 829, 832 (11th Cir. 2016). Abandonment is not cured by raising the issue for the first time in a reply brief. *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009). Binder has abandoned the issue of whether substantial evidence supports the ALJ's implicit determination that she fails to meet or equal Listing 11.03.[1] In her initial brief, Binder neither says she is raising that issue nor develops that issue, much less meaningfully so. She cites only a small portion of her testimony for her

---

[1]In any event, the ALJ found the medical evidence fails to support Binder's assertions on the frequency and intensity of her headaches, Tr. 25–26, and substantial evidence supports that finding (discussed below).

summary contention that she establishes alteration of awareness or significant interference with daytime activity and then concludes the ALJ's failure to discuss Listing 11.03 is the reason for remand. *See* Doc. 16 at 5–6.

**B.    RFC**

Binder argues the ALJ erred by failing to discuss or include actual limitations caused by her headaches in the RFC. Doc. 16 at 6–11.

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2012). To determine a claimant's RFC, the ALJ must consider all record evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2012). But an ALJ need not refer to all evidence in the decision, so long as the decision makes clear he considered the claimant's "medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

Binder points to light and noise as headache triggers and light and smells as headache sensitivities. Doc. 16 at 9, 11. But she cites only a page in the hearing transcript in which she testifies direct sunlight, smells from perfumes and gases, and "some snows" (possibly "some noise" but transcribed incorrectly) in response to a question on whether anything increases the severity of her headaches.[2] Doc. 16 at 9 (citing Tr. 52). The ALJ did not mention those sensitivities in the decision, but his failure to do so does not warrant remand because the decision makes clear he considered Binder's medical condition as a whole. *See Dyer*, 395 F.3d at 1211. He described her assertions about all of her impairments, he described the medical evidence from before and after the alleged onset date, he weighed the medical

---

[2]Moreover, Binder identifies no limitation the ALJ should have included in the RFC to address those asserted sensitivities in a workplace setting, much less one that would prevent her from performing the job of document preparer (a job the ALJ found she can perform), Tr. 30. *See* Doc. 16 at 6–11.

5

opinions, and he found and explained why the evidence did not fully support her assertions. Tr. 22–26.

Binder also points to stress as a headache trigger. Doc. 16 at 10. At various times, she asserted that stress caused her headaches. *See, e.g.,* Tr. 331 (undated functional report in which Binder writes, "I don't handle stress well, I have a migraine daily for my life stress"). And her treating physician, Dr. Cronin, observed her headache triggers are unknown but surmised they could be caused by stress or anxiety. Tr. 463–64. The ALJ noted Dr. Cronin's observation and, contrary to Binder's argument, accounted for stress as a possible trigger by including in the RFC limitations that would minimize stress: sedentary work with both physical limitations (no climbing ladders, ropes, and scaffolds; no crouching; no work at unprotected heights and near moving hazardous machinery; and no driving) and mental limitations (no more than occasional and superficial contact with coworkers and the public; only simple, unskilled work). Tr. 21; *see Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968–69 (11th Cir. 2015)* (observing limitations to simple tasks and unskilled work with little interaction with the public and supervisors accounted for claimant's ability to deal with stress).

Binder presses evidence that she contends could support further limitations in the RFC. Doc. 16 at 7–11. But, as the Commissioner observes, Doc. 17 at 7–8, the issue is not whether evidence supports a different finding or whether the evidence preponderates against the finding made but whether substantial evidence—such relevant evidence as a reasonable person would accept as adequate to support a conclusion—supports the finding made. *See Dyer,* 395 F.3d at 1210. The ALJ did not include further limitations in the RFC, such as the need for breaks and absentee days, because he found the evidence did not support Binder's assertions on the frequency and intensity of her headaches, Tr. 25–26, and substantial evidence supports that finding (discussed below).

C.  **Dr. Cronin's Opinions**

Binder argues the ALJ failed to properly analyze the questionnaire completed by Dr. Cronin in August 2014. Doc. 16 at 11–19; *see* Tr. 462–65.

The SSA evaluates every medical opinion it receives. 20 C.F.R. §§ 404.1527(c) (2012), 416.927(c) (2012). Several factors impact the weight to give an opinion: examining and treatment relationships, supportability, consistency, specialization, and any other relevant factors. 20 C.F.R. §§ 404.1527(c) (2012), 416.927(c) (2012).

Generally, the SSA gives more weight to an opinion from a treating source because the treating source is "likely to be the medical professional[] most able to provide a detailed, longitudinal picture" of the claimant's medical impairment and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2) (2012), 416.927(c)(2) (2012).

If the SSA finds a treating source's opinion on the nature and severity of an impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the SSA will give the opinion "controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2012).

An ALJ must state with particularity the weight given to different medical opinions and the reasons for the weight. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). An ALJ need not give more weight to a treating source's opinion if there is good cause to do otherwise and substantial evidence supports the good cause. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists if the evidence does not bolster the opinion, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the treating source's own medical records. *Id.* at 1240−41. A court "will not second guess the ALJ about the

weight the treating physician's opinion deserves so long as he articulates a specific justification for it." *Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015).

In the questionnaire he completed in August 2014, Dr. Cronin explained he had seen Binder once in the last year. Tr. 462. He stated his diagnosis of her was "migraine headaches," she has them "up to daily," nausea or vomiting is a symptom, and triggers are unknown but could be stress or anxiety. Tr. 463. Under, "Identify any positive test results and objective signs of your patient's headaches," he checked "Impaired sleep" and "MRI" but noted the results of the MRI were yet unknown. Tr. 463. By checking boxes or through one-word responses, he opined: Binder is not malingering; her impairments are reasonably consistent with the symptoms and limitations; her impairments have lasted or are expected to last at least twelve months; she would need a work break when she has a headache; during an eight-hour work day, she sometimes would need to take an unknown number of unscheduled breaks lasting from minutes to hours to lie down or sit quietly but would not need to lie down at unscheduled times; her headaches likely produce "good days" and "bad days"; and she would be absent from work more than four times a month. Tr. 464–65.

As required, the ALJ stated with particularity the weight he was giving to Dr. Cronin's opinions and the reasons for the weight. *See Winschel*, 631 F.3d at 1179. The ALJ specified he was giving them "little weight" and explained: (1) there was little evidence of treatment from Dr. Cronin from the onset date in March 2013 to January 2015, at which time findings were normal; (2) Dr. Cronin's findings from Binder's visits in 2015 were unremarkable, though she reported in September 2015 she was completely unable to work because of headaches, "which appears to be the basis for Dr. Cronin's opinion"; (3) Dr. Cronin's treatment records failed to show the frequency of her headaches; (4) Binder declined treatment with Botox and cervical nerve block; and (5) Dr. Cronin declined to complete disability forms Binder requested. Tr. 27.

8

Those reasons amount to good cause, see *Phillips*, 357 F.3d at 1240, and substantial evidence supports all but the third reason, *Moore*, 405 F.3d at 1211. On the first and second reasons, see Tr. 449–50 (record of January 2014 visit for a cough, hoarseness, and jaw pain for two days), Tr. 509–10 (record of January 2015 visit for annual physical reflecting concerns about weight and referral for consultation regarding mammaplasty), Tr. 505–06 (record of February 2015 visit for a toothache), Tr. 503–04 (record of March 2015 visit for a sore throat, fever, chills, and tiredness), Tr. 512–13 (record of April 2015 visit for plastic-surgery "pre-op"), Tr. 507–08 (record of August 2015 visit for "recent daily migraines"), Tr. 501–02 (record of September 2015 visit for migraines, blood pressure, and long-term-disability-insurance forms), and Tr. 499–500 (record of December 2015 visit for a broken blood vessel in eye). On the fourth reason, see, for example, Tr. 501 (record of Binder's declination of Botox therapy and cervical nerve blocks as treatments for headaches). On the fifth reason, see Tr. 501–02 (record of September 2015 visit noting Binder had asked Dr. Cronin for a "transfer of information" from a FMLA form to a long-term-disability-insurance form; explaining, "No determination of disability based on headaches has been made here, nor any supporting disability form completed here"; and adding, "Declined to complete disability form; advised patient to see neurologist to discuss continued management of headaches, and to obtain a determination whether headaches are sufficiently severe to meet the criteria for complete disability from work"). Substantial evidence does not support the third reason insofar as Binder complained of "daily" headaches in August 2015, *see* Tr. 507–08, but Binder does not argue this as a basis for reversal, and the other reasons still amount to good cause.

Binder argues the ALJ failed to "give any obvious weight" to the fact that Dr. Cronin had treated her for headaches. Doc. 16 at 15–16. But the ALJ recognized that Dr. Cronin had treated Binder for headaches, discussed the records of Binder's visits with Dr. Cronin, and explained the reasons he was giving Dr. Cronin's opinions in the questionnaire "little weight." Tr. 27. Given the ALJ's articulation of "specific

9

justification," the Court will not second guess the weight he decided to give Dr. Cronin's opinions. *See Hunter*, 808 F.3d at 823 (quoted).

Binder takes issue with the ALJ's asserted attribution of Dr. Cronin's opinions in the August 2014 questionnaire to Binder's September 2015 report that she was completely unable to work because of headaches, *see* Tr. 27, contending the reasoning is flawed because of the timing and because a provider always considers subjective complaints, particularly when assessing headaches, and there is no basis to assume Dr. Cronin could not sort through the evidence to provide opinions. Doc. 16 at 16–17. While awkwardly stated, the ALJ could have meant only Dr. Cronin's opinions in the questionnaire were based on Binder's own reports generally—not on Binder's own reports in September 2015. And while Binder's own reports generally as a basis for Dr. Cronin's opinions does not appear to be a reason—or at least a dispositive reason—the ALJ provided for giving Dr. Cronin's opinions "little weight," that basis would not be an improper consideration. *See SSA Questions & Answers* 09-036 ("A diagnosis of migraine headaches requires a detailed description from a physician of a typical headache event (intense headaches with more than moderate pain and with associated phenomena)…; for example, premonitory symptoms, aura, duration, intensity, accompanying symptoms, and effects of treatment. The diagnosis should be made only after the claimant's history and neurological and any other appropriate examinations rule out other possible disorders that could be causing the symptoms.").

Binder complains that while the ALJ acknowledged Dr. Cronin had treated her "in the past," he failed to note Dr. Cronin had completed FMLA forms for her opining she could not work. Doc. 16 at 16. Binder contends, "While prior to her onset date, and thus not dispositive of disability, there can be no question that this is highly probative, and unquestionably informs and bolsters Dr. Cronin's opinion of [her] work-related limitations." Doc. 16 at 16. Whether Dr. Cronin's completion of FMLA forms is "highly probative" is debatable considering he completed them before the onset date and refused to complete disability forms after the onset date. *See* Tr. 501–

02. Regardless, the ALJ had no obligation to expressly mention or analyze Dr. Cronin's completion of FMLA forms. *See Dyer*, 395 F.3d at 1211.

Binder argues the ALJ improperly substituted his lay opinions for Dr. Cronin's expert opinions. Doc. 16 at 17–18. She contends, "Dr. Cronin was obviously aware of his own treatment when he authored his opinion." Doc. 16 at 18 (emphasis in original). Binder adds, "It is patently improper to find a medical opinion regarding how a claimant *would* function during the course of an average workday defective on the basis that the claimant may appear to be more functional when being seen by providers in an office setting and not being subjected to the additional stressors of competitive full-time employment." Doc. 16 at 18 (emphasis in original). Contrary to Binder's argument, the ALJ did not improperly substitute his own opinions for Dr. Cronin's opinions; rather, he properly weighed Dr. Cronin's opinions against other record evidence and based the weight given to the opinions on acceptable factors.

Binder argues the ALJ's "substantive analysis" of her headaches was "entirely speculative" and "based on lay opinion," contending the record does not suggest Excedrin eliminated headaches, the "stable" MRI findings do not mean she has no symptoms, and the record would not support that her headaches had completely resolved. Doc. 16 at 18–19. But the ALJ did not find Binder no longer suffers from headaches. *See* Tr. 21–28. Rather, he found the evidence did not support Binder's assertions on the frequency and intensity of her headaches, Tr. 25–26, and substantial evidence supports that finding (discussed below).

### D. Binder's Testimony

Binder argues the ALJ's evaluation of her subjective symptoms is "legally insufficient" because he did not consider her "stellar" work history. Doc. 16 at 19–21.

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A) (2015). Rather, "there must be medical signs and findings, established by medically acceptable clinical or

11

laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence … would lead to a conclusion that the individual is under a disability." *Id.*

In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which they limit work capacity, an ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4) (2011), 416.929(c)(4) (2011).³ Pertinent evidence includes evidence of daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication for relief of pain or other symptoms; and measures taken to relieve pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3) (2011), 416.929(c)(3) (2011). If an ALJ fails to credit a claimant's testimony about her symptoms, the ALJ "must articulate explicit and adequate reasons for doing so." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

The ALJ found the evidence did not support Binder's assertions on the frequency and intensity of her headaches and articulated explicit and adequate reasons for the finding:

> In terms of her migraine headaches, the objective medical evidence fails to establish the frequency and intensity as alleged by the claimant. While the claimant alleges a history of migraines, the treatment notes by Dr. Thalinger show definite improvement in headaches with

---

³Effective March 28, 2016, SSR 16-3p rescinded a previous SSR regarding "credibility" of a claimant. SSR 16-3p, 2017 WL 5180304 (October 25, 2017) (republished). The SSR removed "credibility" from policy because the regulations do not use that term. *Id.* The SSR clarified that "subjective symptom evaluation is not an examination of an individual's character" and provided a two-step evaluation process. *Id.*

12

Topamax medication. In addition, the treating source records from Dr. Cronin fail to show any abnormal clinical findings or evidence of ongoing complaints of headaches by the claimant, except for in September 2015, when the claimant subjectively reported that she was completely disabled due to headaches. MRI findings suggesting migraine-related evidence remain stable and unchanged. Furthermore, there is no mention of the frequency or intensity of migraine headaches in the treating source records from Agape Community Health, except for the claimant's reported "off and on" migraines since childhood. Nonetheless, the claimant was able to work for many years with her alleged headaches. While Dr. Grobel's treatment notes from March and April 2014 are generally illegible, they do not appear to indicate the frequency or intensity of headaches as described by the claimant or noted by Dr. Grobel. The only reported frequency of migraines appears in the treatment notes of Dr. Toenjes and Dr. Doty in January and October 2015, when the claimant reported 15+ migraines for several months. Nonetheless, this appears exaggerated, particularly based on her statements that Excedrin over-the-counter medication worked well, yet she was concerned of ulcer risk, ultimately reporting vaguely that it depended whether she took Excedrin or not.

Likewise, the treatment history for her migraines has been conservative with various prescribed medications. While there is evidence that the prescribed medications caused side effects, the claimant consistently acknowledges that Excedrin Migraine resolves her headaches effectively. Although additional treatment options have been recommended, such as Botox therapy, the claimant continues to decline such treatment. Furthermore, the claimant acknowledges that her use of over-the-counter medication Excedrin has been reduced greatly, as noted in the most recent treating source records by Dr. Doty. In addition, Dr. Doty's inquiry as to why the claimant has not pursued work since her headaches are well controlled with Excedrin medication, resulted in no viable response by the claimant. Overall, the lack of objective findings and the course of conservative treatment suggest that the claimant is capable of sedentary work activity with the postural and environmental restrictions identified in the assessed [RFC]. …

In assessing the claimant's testimony and statements, the totality of the evidence does not support the degree of limitation alleged or preclude all work activity. Although the claimant has described daily activities that are fairly limited, several factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. While the claimant alleged few activities of daily living, she remains home alone during the day and she is able to care for her

personal needs and prepare simple foods. In addition, she is able to provide care for her 14-year-old daughter, as the primary caregiver. She is able to drive, shop for groceries, and visit with her mother. She acknowledges spending time with her family, playing outside with her daughter, doing some laundry, and driving her daughter to and from school. Furthermore, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

In particular, the claimant acknowledges that her medication for migraines has been helpful, particularly over-the-counter Excedrin Migraine, consistent with the objective medical record. Additionally, she admits a history of migraines since childhood, yet she has been able to work for many years with this condition.

Tr. 25–27 (citations omitted).

Substantial evidence supports the ALJ's finding that the evidence did not support Binder's assertions on the frequency and intensity of her headaches.

On improvement with Topamax, see Tr. 432 (record of March 2012 visit with Karen Thalinger, M.D., explaining Binder "has been on Topamax, 50 mg at night with definite improvement in headaches"), and see also Tr. 565 (record of April 2014 visit with Dr. Robert Grobel appearing to indicate her report that migraines were returning because she needed Topamax) and Tr. 538 (record of January 2016 visit with Dr. Grobel appearing to indicate Topamax has helped headaches).

On the absence of abnormal clinical findings by Dr. Cronin and the absence of evidence of ongoing complaints of headaches, see Tr. 449–50 (record of January 2014 visit for a cough, hoarseness, and jaw pain for two days), Tr. 509–10 (record of January 2015 visit for annual physical reflecting concerns about weight and referral for consultation regarding mammaplasty), Tr. 505–06 (record of February 2015 visit for a toothache), Tr. 503–04 (record of March 2015 visit for a sore throat, fever, chills, and tiredness), Tr. 512–13 (record of April 2015 visit for plastic-surgery "pre-op"), Tr.

14

507–08 (record of August 2015 visit for "recent daily migraines"), Tr. 501–02 (record of September 2015 visit for migraines, blood pressure, and long-term-disability-insurance forms), and Tr. 499–500 (record of December 2015 visit for a broken blood vessel in her eye).

On the MRI findings suggesting that migraine-related evidence remains stable and unchanged, see Tr. 488–90, 597–98 (record of June 2015 MRI explaining, "There are punctate foci of increased T2 signal noted within the left cerebral hemisphere, frontal and partial lobe subcortical white matter, demonstrating no enhancement. These are stable in size"; "The presence of high T2 signal can be seen with a cystic microadenoma. It is stable in size compared to the prior MRI scan of the brain"; "There is no newly developed enhancing mass"; and "The lesion appears stable compared to the prior MRI scan of brain").

On Binder's ability to work for years despite having suffered from headaches since childhood, see Tr. 45–47 (Binder's testimony describing her employment history), Tr. 305 (Binder's "work history report" describing employment from 2002 to 2013), Tr. 430 (record of February 2012 letter from Dr. Thalinger describing Binder's report of having had headaches "since her teens" with worsening in the "past year"), and Tr. 443 (record of October 2013 clinical visit to Agape Community Health Center describing Binder's report of "off and on" migraines since childhood, becoming "really bad" in the past three years).

On conservative treatment, see, for example, Tr. 402 (record of January 2012 visit with Dr. Cronin prescribing naproxen and referring Binder to a neurologist), Tr. 400 (record of October 2012 visit with Dr. Cronin prescribing medications for impairments other than headaches), Tr. 431 (record of February 2012 visit with Dr. Thalinger prescribing Topamax, encouraging Binder to reduce Excedrin, and setting a six-week follow-up appointment), Tr. 398 (record of January 2013 visit with Dr. Cronin prescribing medications for impairments other than headaches), Tr. 396 (record of February 2013 visit with Dr. Cronin prescribing Butalbital to take "as

15

needed for headache"), Tr. 450 (record of January 2014 visit with Dr. Cronin prescribing medications for impairments other than headaches), Tr. 508 (record of August 2015 visit with Dr. Cronin prescribing medications for impairments other than headaches), Tr. 524 (record of October 2015 visit with Erin Doty, M.D., describing plan for neck, head, and brain imaging and prescribing Relpax), and Tr. 527 (record of December 2015 visit with Dr. Doty describing plan to monitor blood pressure, follow up with primary care provider and psychiatry, and return in eight weeks).

On the effectiveness of Excedrin and Binder's decreased use of it, see Tr. 494 (record of August 2015 visit with David Chabolla, M.D., describing Binder's report that Excedrin has been most helpful for headaches, but she tries to minimize its usage), Tr. 522 (record of October 2015 visit with Dr. Doty describing Binder's report that Excedrin is the only thing that gives Binder relief and either completely resolves the headache or makes the pain more tolerable), and Tr. 526–27 (record of December 2015 visit with Dr. Doty describing Binder's reports that she has been taking Relpax since the last visit but still needs Excedrin "for full relief," that she treats migraines with Excedrin one to two days a week, and that she "has greatly reduced" her Excedrin intake).

On Binder's declination of treatments for her headaches, see, for example, Tr. 494 (record of August 2015 visit with Dr. Chabolla indicating Binder postponed getting occipital nerve blocks as ordered in March 2015 and has been reluctant to consider Botox therapy as recommended), Tr. 501–02 (record of September 2015 visit with Dr. Cronin describing Binder's declination of Botox therapy and cervical nerve blocks as recommended), Tr. 521 (record of January 2015 visit with Steven Toenjes, M.D., noting his opinion that Binder is a good candidate for Botox), Tr. 522–24 (record of October 2015 visit with Dr. Doty noting insurance approved Botox therapy but Binder had not received it due to needle phobia and opining that failure of medications to work means either she does not have chronic migraines or she needs

16

Botox therapy), and Tr. 527 (record of December 2015 visit with Dr. Doty explaining that Binder "does not wish to proceed with Botox at this time"); and see also *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 (11th Cir. 2016) (explaining a lack of desire for treatment is not a good cause to fail to seek treatment).

On the ALJ's statement, "Dr. Doty's inquiry as to why the claimant has not pursued work since her headaches are well controlled with Excedrin medication, resulted in no viable response by the claimant," see Tr. 523 ("She is not working due to frequent headaches. I asked her if the Excedrin Migraine works so well for her headaches, why isn't she able to work. She states that Amy Toenjes and Dr. Toenjes told her that she should not keep taking Excedrin Migraine daily due to risk of ulcers. When asked if she has been taking it daily, she replied 'it depends.'").

Finally, on Binder's daily activities, see, for example, Tr. 326 (Binder's report that she takes her daughter to school and picks her daughter up from school), Tr. 328 (Binder's report that she shops once a week), Tr. 329 (Binder's report that she spends time with her family, shops, and plays outside with her daughter), and Tr. 456 (Binder's report that she visits her mother and does some laundry).[4]

Binder's argument that the ALJ's assessment of her subjective symptoms is "legally insufficient" because he failed to consider her "stellar" work history, Doc. 16 at 19–21, provides no basis for reversal. The ALJ asked Binder about her work history during the hearing, Tr. 45–47, and relied on her ability to work for many years despite

---

[4]The ALJ erroneously describes the number of places in the medical evidence in which Binder reported the frequency of headaches. *See, e.g.*, Tr. 507 (record of August 2015 visit with Dr. Cronin describing Binder's complaint of "daily" migraines), Tr. 443 (record of October 2013 visit with Agape Community Health describing Binder's report of "daily" headaches), Tr. 564 (record of July 2014 visit with Dr. Grobel appearing to record Binder's complaint that her migraines were frequent). Binder does not mention this error in her brief or contend the error is a basis for reversal. *See generally* Doc. 16. For that reason, the Court does not consider the error as a basis for reversal. In any event, the error is harmless because the ALJ relied on many other reasons to find the evidence did not fully support Binder's testimony on the frequency and intensity of her headaches. *See* Tr. 25–26.

lifelong headaches as a factor in discounting the frequency and intensity of her headaches, Tr. 25–26. The ALJ could have but did not have to weigh Binder's work history favorably to her. It is not the Court's place to reweigh the evidence here. *See Moore*, 405 F.3d at 1211; *see also Osborn v. Barnhart*, 194 F. App'x 654, 663 (11th Cir. 2006) (explaining the ALJ properly relied on the claimant's work history to find his headaches were not disabling).

## IV. Conclusion

The Court **affirms** the Commissioner's decision and **directs** the clerk to enter judgment for the Commissioner and against Gerovanie Binder and close the file.

**Ordered** in Jacksonville, Florida, on March 28, 2019.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record